## J. M. SETTLES, Appellant, v. OLLIE MOORE and H. L. SCOBEE, Respondents.

**St. Louis Court of Appeals. Argued and Submitted June 6, 1910. Opinion Filed June 14, 1910.**

1. **PLEADING: Non Est Factum: Payment: Failure of Consideration: Consistency.** The plea of *non est factum* is not incompatible with the defense of payment, and the defense of delivery without authority, which is practically the defense of *non est factum*, is not incompatible with the defense that the consideration had failed.

2. **BILLS AND NOTES: Non Est Factum: Necessity of Oath.** In an action on a note, the defense of non-delivery must be made under oath.

3. ———: **Non Est Factum: Failure of Consideration: Consistency: Pleading.** In an action on a note, a defense that the note was delivered without the authority of the makers and in violation of an agreement whereby it was not to be delivered by the payee's agent until a certain article, for the purchase price of which it was given, had been delivered to said makers was not inconsistent with a defense that there was a failure of consideration of the note, in that the article tendered was not of the kind contracted for.

4. ———: **Action by Endorsee: Failure of Consideration: Necessity of Showing Endorsee's Knowledge.** In an action on a note negotiated before maturity, the defense of failure of consideration or of non-delivery of the note is not good against an endorsee, unless he had actual knowledge of such fact.

5. ———: ———: **Defense of Non-Delivery: Sufficiency of Evidence.** In an action on a note alleged to have been given in part payment of a separator, whether there was execution and delivery of the note *held*, under the evidence, a question for the jury.

6. ———: ———: ———: **Title of Endorsee.** Where a note was placed in escrow and was delivered to the payee contrary to the terms of the escrow, and the latter negotiated it before maturity, there was no delivery and no execution of the note, and the endorsee acquired no title to it.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED.

*James P. Boyd* for appellant.

*Ragland & McAllister* for respondents.

STATEMENT.—This action was commenced before a justice of the peace of Monroe county, upon a note signed by the defendants, whereby on or before the 1st of October, 1907, they promised, for value received "in one rebuilt Rumley Separator," to pay to the order of the Weber Implement Company, $200, with interest at the rate of 7 per cent per annum from date of delivery until paid. The note was endorsed on the back, "Pay to J. M. Settles, without recourse on us. Weber Implement Company, per Geo. Weber." Defendants filed with the justice an affidavit denying that they executed the note in this, that the affiants "say that they signed said note, but did not deliver the same nor authorize any other person or corporation to deliver the same to the Weber Implement Company, nor to any other person, for the purpose of giving said instrument effect." The trial before the justice resulting in a verdict for plaintiff, defendants appealed to the circuit court where there was a new trial before the court and jury. At this trial plaintiff introduced evidence tending to show that T. H. Roberson, then salesman at Santa Fe, in Monroe county, for the Weber Implement Company, called on the defendants, who agreed to purchase the machine he was selling, a second-hand machine. The contract for this purchase is in the shape of what is called "a machine order," which was produced and introduced in evidence by the defendants. It is of the same date as the note, and directs the Weber Implement Company of St. Louis to ship and furnish to the defendants, at Rush Hill,

Monroe county, "one separator 30 in. Rumley rebuilt with blower weigher and all be't 120 ft. 7 in. 4 ply canvas. Miscellaneous one cylinder wrench to be with separator." In consideration of this the defendants by this sales memoranda, which were signed by defendants, agree to receive the same on its arrival at Rush Hill, pay the cash for the freight and charges from East St. Louis and agree to pay at the time and place of delivery or at East St. Louis, at the option of the Weber Implement Company, the sum of $400 as follows: One note for $200, due October 1, 1907, one note for $200, due October 1, 1908, notes to be payable to Weber Implement Company, draw interest at 7 per cent per annum, it being understood that the machinery is purchased as second-hand, "with no warranty expressed or implied except as noted above." This action is on the first of these notes. It is further agreed that as security for the notes, defendants would give a first mortgage on the above named machinery. As before stated this agreement was signed by both defendants but not by the Weber Implement Company. It further appears by the testimony of plaintiff that after the notes were signed by the defendants that they gave them to Roberson, the agent of the Weber Implement Company, who took them to the bank at Santa Fe and left them at the bank in charge of the cashier and at the same time left the chattel mortgage referred to, which was to be given by defendants on the separator, and which defendants agreed they would sign, it being left at the bank for that purpose as they could not get away that day to sign it. It appears that the notes and the mortgage were left with the bank and that after the defendants acknowledged the mortgage the bank sent them to the Weber Implement Company in St. Louis. The evidence of plaintiff tended to show that this was done according to agreement between the parties but according to the evidence introduced by defendants, the bank had received no directions about sending the notes and mortgage on to the

Weber Implement Company, but apparently of their own volition had, as soon as the defendants executed the mortgage, sent that with the notes to the Weber Implement Company. The testimony on the part of defendants further tended to show that the notes and the mortgage were not to be sent by the bank to the Weber Implement Company, and were not to be delivered to the latter until the separator had arrived and had been accepted by the defendants. There was testimony tending to show that the separator was shipped to the defendants and that when they saw it, which was about the 26th or 27th of July, one of the defendants called up one Gray, who appears to have been the general agent for the Weber Implement Company at Moberly, and told him that they were not satisfied with the separator. In the meantime the notes and mortgage had been sent to this agent (Gray) from St. Louis by the Weber Implement Company, as he testified, for sale, and on the day that he had this telephone conversation with one of the defendants he concluded a sale of the notes to Settles, the plaintiff, for $360 cash. Plaintiff had been in the employ of the Weber Implement Company off and on for about three years; never steadily employed at any one time; worked for that company when he was needed. Plaintiff himself testified that when he bought the two notes he "did not have any information and evidence" that defendants made any objection to the machine or were likely to do so. When he bought the notes did not know either of the defendants; first he ever heard of them was the day he bought the notes. Gray then told him who the defendants were and where they lived; did not know whether Gray knew them or had ever seen them; took the notes without recourse and made no inquiry as to whether the mortgage was recorded; had no understanding that the Weber Implement Company would stand back of the notes and make them good if he lost; bought the notes at ten per cent discount. There was no evidence that Gray knew either of the de-

fendants. This agent (Gray) testified that he had negotiated the sale of the notes with plaintiff some days before that but that he did not consummate it until the same day that he received word from defendants that they were dissatisfied with the separator and that after he received the money from plaintiff for the notes he had sent the notes to St. Louis for the endorsement of the Weber Implement Company and that they came back to him endorsed, as before noticed, by the Weber Implement Company and he had then delivered them to the plaintiff. Plaintiff was around the place that day; did some work there for the Weber Implement Company. Plaintiff also produced a receipt signed by the Weber Implement Company, by Gray, manager, dated July 26, 1907, for the $360 for the two notes sold to him, being the notes executed by the defendants. This agent of the Implement Company stated that after he had received this money from plaintiff and had given him this receipt he (Gray) sent the notes back to the Weber Implement Company for endorsement. The defendants gave testimony tending to prove that at the time they signed the notes, the agent of the Weber Implement Company told them that he had a good deal to do and that to save trouble he would ship the machine out right away if defendants would sign the notes; that he would leave the notes at the bank for defendants until they received the machine; that at the same time the mortgage was drawn up but not signed, the notes and mortgage being turned over to the agent, who said he would leave them at the Santa Fe Bank until the defendants received the machine; that the defendants could come in in a day or two and sign the mortgage as they could not go to the bank that day. Defendants afterwards went to the bank and signed the mortgage and left that with the notes at the bank. The Weber Implement Company afterwards shipped a machine which defendants described as "an old trap of a machine, painted over." They described the defects in

the machine and their testimony was to the effect that it was not of any value as a threshing machine and defendants refused to receive it as not being up to what had been represented. As soon as they saw it, one of the defendants went off to the telephone and called up Gray; that, he said, was on the 25th of July, and also wired the Implement Company at St. Louis. Told Gray in the conversation over the telephone that the machine was not what they had bought and they would not accept it. Gray told them he was going to St. Louis; that he had shipped the machine out; that it was defendants' and that he was not going to fool with it. Afterwards defendants received notice that it was sold by the railroad company for charges, and it was knocked off to a man at that sale for $30. This is practically the testimony in the case, defandants being corroborated in their version of the transaction by two or more witnesses and also as to the character and value of the machine; that it was an old one, and also testimony as to what was meant by the term, "a rebuilt machine," as understood by those who dealt in them, and their witnesses also testified on the part of defendants that this separator in the condition it was when received at the point of destination, had no value for the purposes of threshing grain or seed.

At the conclusion of the evidence the plaintiff asked the court for an instruction to find for plaintiff which the court refused and plaintiff excepted. Plaintiff also asked the court for an instruction that if the jury found from the evidence in the case that plaintiff, at any time before the 1st of October, purchased the note in controversy from the Weber Implement Company and paid therefor a valuable consideration, their verdict should be for the plaintiff and the burthen of showing that plaintiff did not purchase the note is upon the defendants. The court refused this, plaintiff excepting. At the instance of plaintiff the court gave an instruction to the effect that if they found from the

evidence that plaintiff at any time before the 1st of October, 1907, purchased the note in controversy from the Weber Implement Company and that the purchase was in good faith and for value and that at the time of delivery of the note to plaintiff he had no notice of any infirmity in the note or defect in the title of the note in said Weber Implement Company, their verdict should be for the plaintiff. The court further instructed the jury at the instance of plaintiff that to constitute notice to plaintiff of any infirmity in the note in controversy or defect in the title thereto in the Weber Implement Company, plaintiff at the time of the purchase of the note and delivery thereof to him must have had actual knowledge of the infirmity or defect, if any, or knowledge of such facts that his action in taking the note amounted to bad faith. These instructions were given at the instance of the plaintiff. At the instance of the defendant the court instructed the jury that if they believed from the evidence that at the time the defendants signed the note sued on it was agreed between defendants and the agent of the Weber Implement Company that the note should not be delivered to the Implement Company but should be placed in the Santa Fe Bank to be held by it until the defendants should receive and approve a certain threshing separator contracted for by defendants with the company and that the Implement Company, in violation of the agreement and without defendants having received or approved the separator, obtained possession of the note from the bank without consent of the defendants, then as between the defendants and the Weber Implement Company there was no delivery of the note and if the jury find from the evidence that the defendants entered into a contract with the Weber Implement Company for the purchase of a rebuilt Rumley threshing separator and that it was to be used by the defendants for threshing grain, that the note sued on was signed by the defendants prior to the receipt by

them of the separator and was intended to be for part of the purchase price of the same and the Implement Company thereafter failed to deliver or offer to deliver to the defendants a separator "in accordance with the term of said contract, but shipped to Rush Hill a separator which defendants refused to receive or approve because, if such is the fact, it was not a rebuilt separator as required by said contract and was wholly worthless for the purpose of threshing grain," then as between the Implement Company and defendants there was no consideration for the note, and if they find from the evidence that plaintiff did not take the note in good faith and for value or at the time of the negotiation of it to him had knowledge of such facts touching the nondelivery of the note or the failure of consideration therefor as hereinbefore explained, the verdict must be for the defendant, "although you may believe that plaintiff had no actual knowledge of the non-delivery of the note or of the failure of consideration therefor, if any." This was excepted to by plaintiff and the jury returned a verdict in favor of the defendants on which judgment followed and from which plaintiff, after filing a motion for new trial, which was overruled and exceptions saved, has appealed to this court.

REYNOLDS, P. J. (after stating the facts).— The errors relied upon by the learned counsel for the appellant are, first, that the defenses of *non est factum* and of failure of consideration are inconsistent; that the proof of one disproves the other. Counsel cite in support of this the case of Gabriel v. Met. St. R. Co., 130 Mo. App. 651, 109 S. W. 1042. We do not agree with counsel and do not think that the case cited bears him out in his contention. The case was instituted before a justice of the peace originally and the ordinary defense was put in as before a justice, practically that they did not owe the notes, an affidavit denying that the notes had been delivered being also filed. At the trial

in the circuit court defendants gave evidence tending to prove both of these, in that it tended to prove that the machine shipped was not of the kind purchased— a failure of consideration. Our courts have decided in several cases that the plea of *non est factum* is not incompatible with the defense of payment and we see no reason to hold that the defense of delivery without authority, which is practically the defense of *non est factum* here made, should be held to be incompatible with the defense that the consideration had failed. Defense of non-delivery must be made under oath. [Hahs v. Cape Girardeau & C. R. Co., 147 Mo. App. 262, 126 S. W. 524; Hart v. Harrison Wire Co., 91 Mo. 414, 4 S. W. 123.] While defendants admitted that they signed the note in suit, they denied delivery by their authority, claiming that the delivery made was in violation of the arrangement between them and the agent of the Weber Implement Company. Their claim is that there was to be no delivery until a machine of the kind contracted for had been delivered, and the real defense was that the machine delivered or tendered was not of the kind contracted for and hence the delivery should not have been made of the note in suit to the Weber Implement Company. We see no inconsistency in this line of defense.

Criticism is made of the instruction of the court given at the instance of defendants, in which the court told the jury that the verdict must be for defendants, "although you may believe that plaintiff had no actual knowledge of the non-delivery of the note or of the failure of consideration therefor." This is error. Reading all the testimony as abstracted by counsel, we are unable to find any testimony tending to prove that plaintiff had such knowledge. The evidence made a case for the determination of the jury as to whether there was execution and delivery of the notes, and it would have been error to have taken it from the jury on that issue, for if there was no execution, if the notes

were to be placed and held in escrow until defendants received the machine and they were delivered contrary to the terms of the escrow, there was no execution of them and plaintiff could acquire no title. In effect, delivery contrary to agreement would constitute no delivery and no execution. The judgment is reversed and the cause remanded. GOODE and NORTONI, JJ., concur.